## METROPOLITAN EDISON CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6612.

Circuit Court of Appeals, Third Circuit.
Aug. 23, 1938.

William H. S. Wells, of Philadelphia, Pa., Francis J. Sweeney and C. M. Trammell, both of Washington, D. C., Bradford S. Magill, of New York City, and Maurice Bower Saul, of Philadelphia, Pa. (Saul, Ewing, Remick & Saul, of Philadelphia, Pa., of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Helen Carloss, Sp. Assts. to Atty. Gen., for respondent.

Before BUFFINGTON, DAVIS, and BIGGS, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from an order of redetermination, entered by the Board of Tax Appeals, holding that the petitioner is liable for deficiencies of $21,620.55 and $78,620.55 in its income tax returns for 1927 and 1928, respectively.

In determining these deficiencies, the Board upheld the contention of the commissioner that certain deductions claimed by the petitioner for the years in question were not allowable. There were other issues involved before the Board which were determined in favor of the petitioner (35 B.T.A. 1110) but as the commissioner did not appeal, we are not concerned with them here.

In 1927 and 1928 after having absorbed certain of its subsidiaries, the petitioner redeemed for cash bonds previously issued by them and in its income tax returns for

those years deducted the unamortized discount and expenses connected with the issuance of these bonds. The question is whether or not the petitioner had the right to make these deductions.

If the transactions by which the petitioner absorbed these subsidiaries constituted a true merger under the law of Pennsylvania, then the petitioner was entitled to the deductions claimed, but if they were sales and not mergers, then the Board correctly disallowed them.

The facts upon which the petitioner bases its claims for deductions are similar for both years, but we think that the opinion will be clearer if we take up those for 1928 first.

## I. Deductions for 1928.

In or prior to 1928 the petitioner absorbed four of its subsidiary corporations, the Cumberland Valley Light & Power Co., the York Haven Water & Power Co., the Hanover Power Co., and the Pennsylvania Edison Co. These companies transferred all of their franchises and assets to the petitioner, which thereupon assumed all of their debts and returned to them for cancellation all of their capital stock. This was done in accordance with the provisions of the "short form merger statute", Purdon's Pennsylvania Statutes, Title 15, Section 595, under whose provisions the subsidiaries ceased to exist. The petitioner then, in 1928, redeemed for cash the bonds which these companies had previously issued totalling $11,142,900 and also paid premiums on them amounting to $645,251.34. When these bonds were redeemed there remained unamortized discount and issuing expenses amounting to $769,864.54. In its income tax return for that year, 1928, the petitioner claimed deductions for the premiums paid and the unamortized discount and expenses. The commissioner disallowed both deductions. On appeal to the Board, the deduction for premiums was allowed, but the deduction for unamortized discount and expenses was not allowed.

■ It is clear that the deduction would have been allowed if the petitioner itself, had issued the bonds, Article 545 of Regulations 69; Article 68 of Regulations 74; Helvering v. Union Pacific R. Co., 293 U.S. 282, 55 S.Ct. 165, 79 L.Ed. 363; point I of the Board's opinion in this case, 35 B.T.A. 1117, or if it had advanced the money to the subsidiaries to redeem the bonds, and had thereafter filed a consolidated income tax return with them. Point II of the Board's opinion in this case, 35 B.T.A. 1117, 1118.

The "short form merger statute", which the petitioner followed in absorbing these subsidiaries, provides, in part, that any corporation, with the consent of its stock holders, is entitled to "sell, assign, dispose of and convey to any corporation created under or accepting the provisions of this act, its franchises, and all its property, real, personal and mixed, and thereafter such corporation shall cease to exist, and the said property and franchises not inconsistent with this act, shall thereafter be vested in the corporation so purchasing * * *".

■ In disallowing the deduction, the Board placed great stress on the words "sell" and "purchasing" contained in the statute, and also upon the use of similar words in the agreements attending the transactions, but these particular words are not decisive of the issue, for "whether a particular transaction is in reality a sale, conversion, consolidation or merger, to a great extent depends upon the circumstances surrounding each particular case; and in determining the question all elements of the transaction must be considered. There is no magic in the words applied to the transaction. Calling it a consolidation does not make it so, and giving it another name does not prevent it from being a consolidation." 14 (a) C.J. 1056; 15 Fletcher Cyclopedia Corporations, Sec. 7043.

The transactions by which the companies mentioned above were absorbed contained the following elements: (1) The subsidiary corporations transferred all of their franchises and assets to the petitioner in consideration for the assumption of their debts and return and cancellation of all their capital stock; (2) the subsidiaries, by operation of law, thereupon ceased to exist; (3) the petitioner, an existing corporation before the alleged merger, continued to exist thereafter; and (4) the petitioner became liable for the debts of the absorbed subsidiaries both under the contract and by operation of law. 14 (a) C.J. 1056 and 1072; 15 Fletcher Cyclopedia Corporations, Sec. 7121; 15 A.L.R. 1112; 30 A.L.R. 558; 39 A.L.R. 143; Montgomery Web Co. v. Dienelt, 133 Pa. 585, 19 A. 428, 19 Am.St.Rep. 663; Maxler v. Freeport Bank, 275 Pa. 510, 119 A. 592; In re Buist's Estate, 297 Pa. 537, 147 A. 606; Kulka v. Nemirovsky, 321 Pa. 234,

182 A. 692; Commonwealth v. Merchants National Bank of Allentown, 323 Pa. 145, 185 A. 823; In re Harr, 323 Pa. 380, 186 A. 120.

■■ These elements comprise all of the essential characteristics of a true merger, which is defined as the union "of two or more corporations by the transfer of property of all to one of them, which continues in existence, the others being swallowed up or merged therein. In regard to the survivorship of one of the constituent corporations, it differs from a 'consolidation' wherein all of the consolidating companies surrender their separate existence and become parts of a new corporation." Black's Law Dictionary, 2d Ed.; 5 Words and Phrases, First Series, p. 4492; 14 (a) C.J. 1054 et seq.; 15 Fletcher Cyclopedia Corporations, section 7041; Cortland Specialty Co. v. Commissioner, 2 Cir., 60 F.2d 937.

■ In the recent case of General Gas & Electric Corp. v. Commissioner, 2 Cir., 98 F.2d 561, decided July 18, 1938, the court was of the opinion that, since the "short form merger statute" contained no specific provision that the absorbing corporation became liable for the debts of the absorbed company, it, apart from contract, became "liable only on principles of fraudulent conveyance and to the extent of value of the assets received". It is true that in Merwine v. Mt. Pocono Light & Imp. Co., 304 Pa. 517, 156 A. 150, the only case cited on this point, the Supreme Court of Pennsylvania indicated that the absorbing corporation might possibly be held liable for the debts of the merged corporation on that principle. The Courts of Pennsylvania, however, have never held that the procedure under this Act did not result in a merger, but have often referred to it as a merger. Pennsylvania Utilities Co. v. Public Service Comm., 69 Pa.Super. 612; Hey v. Springfield Water Co., 207 Pa. 38, 56 A. 265, 268; York Haven Water & Power Co. v. Public Service Comm., 287 Pa. 241, 134 A. 419, 421; Commonwealth v. Huntingdon Gas Co., 11 Pa.Dist.R. 546, 26 Pa. Co. Ct.R. 657. This carries the implication that independently of the law of fraudulent conveyances the absorbing corporation is liable for the debts of the absorbed corporation. Commonwealth v. Merchants National Bank of Allentown, supra.

The "short form merger statute" of 1876, as amended, was the only statute until the passage of the Corporation Laws of 1933, 15 P.S.Pa. § 2852—1 et seq., which provided a method for a true merger. The so-called "long form merger statute" (Purdon's Pennsylvania Statutes, Title 15, sections 421, 422 and 423) provided only for consolidation. It expressly required the formation of a new corporation to take over the assets of the merged corporations. Pennsylvania Co., etc., v. Commissioner, 3 Cir., 75 F.2d 719, 721.

In the case of General Gas & Electric Corp. v. Commissioner, supra, it was pointed out that, for the purposes of actions pending against it, an absorbed corporation continues to exist. Merwine v. Mt. Pocono Light & Improvement Co., supra. But we have not found any cases which hold that the absorbed corporation under the "long form merger statute" does not also continue to exist for that purpose, and the language used in section 423 indicates that it does so continue to exist. Both the short and the long form statute are equally explicit in providing that the absorbed corporation ceases to exist. It would, therefore, appear that the effect of a merger under both statutes is the same in this respect.

■ The fact that the word "sale" is used in the "short form merger statute" is not of itself conclusive, for a sale may be one of the steps of a merger. 8 Thompson on Corporations (3d Ed.) section 6013; Chicago, S. F. & C. R. Co. v. Ashling, 160 Ill. 373, 380, 381, 43 N.E. 373, 375; Continental Trust Co. v. Toledo, St. L. & K. C. R. Co., C.C., 82 F. 642. Clearly the transactions here involved do not constitute a true sale, for that implies a transfer of property for consideration in money. Blacks Law Dictionary (2d Ed.); Cortland Specialty Co. v. Commissioner, supra. If the concepts of barter and exchange are included in the word "sale", it would be difficult to find any merger which did not contain some, if not all, of the elements of a sale. In every case of merger which we have been able to discover, the absorbing corporation, in return for the assets of a merged corporation, gave some consideration either to the merged company, its stockholders or its nominees. If this be considered a "sale," then practically every merger is a sale.

■ We are convinced that the transactions, by means of which the petitioner absorbed the subsidiaries here involved, partook of all of the essential elements of a merger (Chicago, S. F. & C. Ry. Co. v. Ashling, supra), and that the petitioner is entitled to the deduction claimed for 1928.

American Gas & Elec. Co. v. Commissioner, 2 Cir., 85 F.2d 527; New York Cent. R. Co. v. Commissioner, 2 Cir., 79 F.2d 247, certiorari denied 296 U.S. 653, 56 S.Ct. 370, 80 L.Ed. 465; Western Maryland Ry. Co. v. Commissioner, 4 Cir., 33 F.2d 695; American Gas & Elec. Co. v. U. S., 17 F. Supp. 151, Ct.Cl.

II. Deduction for 1927.

In 1923, the petitioner formed the Metropolitan Power Company, hereinafter called the Power Company, for the purpose of building and operating a large electric generating station on the Susquehanna River in Dauphin County, Pennsylvania. The petitioner purchased all of its capital stock, loaned it $3,000,000, guaranteed its bond issue of $3,250,000 and purchased all of its power. As the Board found, the petitioner, with the exception of the bondholders, was its sole creditor. The reason for creating the Power Company was to secure the bond issue by a first mortgage on the plant. It had no public franchises.

In 1927, after having obtained the permission of the Public Service Commission of Pennsylvania, the Power Company transferred all of its assets to the petitioner and in return the petitioner surrendered all of the capital stock of the Power Company for cancellation, cancelled the indebtedness of $3,000,000 and assumed all of its liabilities.

This procedure, technically, was not within the provisions of any merger statute, but there is no question as to its legality. The reason given for not following the provisions of the "short form merger statute" was that the Power Company possessed no public franchises. 35 B.T.A. 1113 (finding of fact No. 3). However, this procedure in form and effect is practically and substantially that which the "short form statute" prescribes.

After having absorbed the Power Company, the petitioner, in 1927, redeemed for cash the bonds, previously issued by the Power Company, totaling $3,250,000. It paid premiums on these bonds amounting to $243,645 and there existed unamortized discount and expenses totaling $308,097.90. In its income tax return for 1927, the petitioner claimed deductions for both the amount of the premiums paid and the unamortized discount and expenses. The Board allowed the former but disallowed the latter deduction.

The same question as was involved in the deduction for 1928 is also here involved, and that is whether or not the transaction of absorption was a merger.

The analysis of this transaction shows: (1) That the Power Company transferred all of its assets to the petitioner; (2) that the petitioner was an existing corporation and continued to exist; (3) that the Power Company, though it did not automatically cease to exist upon the completion of the transaction, did discontinue all operations and was left without stockholders or property of any sort; and (4) that the petitioner, both by contract and operation of law, became liable for the debts of the Power Company. 14 C.J. 970; 15 Fletcher Cyclopedia Corporations, section 7127; In re Harr, supra; In re Buist's Estate, supra; Commonwealth v. Merchants Nat. Bank of Allentown, supra.

The only difference between the above procedure and that followed by the petitioner under the "short form merger statute" with reference to the 1928 deduction was that the Power Company continued to exist nominally, while the Cumberland, York-Haven, Hanover and Pennsylvania Edison Companies automatically under the statute ceased to exist except as noted above. This was a mere technical, and not a practical or substantial difference, and should not determine the rights of the parties. Moreover the transfer by the Power Company of all of its assets and cancellation of all of its stock effected its de facto dissolution (14 (a) C.J. 1117; Lauman v. Lebanon Valley R. Co., 30 Pa. 42, 72 Am. Dec. 685; Reynolds v. Cridge, 1 Pa.Dist. R. 693, 11 Pa.Co.Ct.R. 306; Commonwealth v. Altoona & P. C. R. Co., 32 Pa. Co.Ct.R. 449; Skirvin Operating Co. v. Southwestern Electric Co., 71 Okl. 25, 174 P. 1069, 15 A.L.R. 1104, 1110), and its formal dissolution in January 1928 was only a declaration of that fact. 14 (a) C.J. 1118.

It follows that the petitioner was also entitled to the deduction for 1927 and the order of redetermination of the Board must be set aside and the case remanded to it with directions to proceed to redetermine the tax of the petitioner in accordance with this opinion.