**AMERICAN GAS & ELECTRIC CO. et al. v. UNITED STATES.**

No. 42074.

Court of Claims.

Dec. 7, 1936.

Thomas G. Haight, of Jersey City, N. J. (Robert H. Montgomery and J. Marvin Haynes, both of Washington, D. C., on the briefs), for plaintiffs.

James A. Cosgrove, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The plaintiff claims to have overpaid its tax for the years 1926 and 1927, and by reason thereof asks judgment in its petition for $1,699,264.88, .with interest.

The Virginian Power Company was organized in 1912 and was part of a chain of operating companies controlled by the plaintiff. In 1924 the plaintiff organized the Appalachian Securities Corporation, and in 1925 that corporation acquired all of the assets and assumed all of the liabilities, including bonds, of the Virginian Company in exchange for 82,000 shares of its preferred stock. In the same year, and somewhat later, the Appalachian Power & Light Company, which had been organized by the plaintiff, acquired all of the assets and assumed all of the liabilities, including bonds, of the Virginian Company which had been previously assumed by the Appalachian Securities Corporation. In exchange for this property, the Appalachian Power & Light Company issued and gave 1,000,000 shares of its common stock. Following this transaction, the Appalachian Securities Corporation and the American Gas & Electric Company were consolidated under the laws of the state of New York to form the American Gas & Electric Company. All of these transactions occurred in 1925.

By November 16, 1925, the American Gas & Electric Company had acquired more than 95 per cent. of all classes of stock ,in the Appalachian Power Company

which had absorbed the operations of the Virginian Power Company. In 1926 the Appalachian Power & Light Company and the Appalachian Power Company were merged into one corporation forming the Appalachian Electric Power Company.

Both the Virginian Power Company and the Appalachian Power Company were originally subsidiaries of the plaintiff, but the various reorganizations recited above left in their place only one subsidiary, the Appalachian Electric Power Company, manufacturing and selling electricity in West Virginia.

When the Virginian Power Company transferred all of its assets and liabilities, including bonds, to the Appalachian Securities Corporation, both corporations treated the transaction as a nontaxable reorganization under sections 203 and 204 of the Revenue Acts of 1924 and 1926 (43 Stat. 256, 258, 44 Stat. 12, 14), and neither corporation reported a profit or loss therefrom in its 1925 federal income tax return. The Commissioner of Internal Revenue, after examination, approved the returns. When the Securities Corporation caused the assets and liabilities which it had acquired from the Virginian Company to be transferred to the Appalachian Power & Light Company, both companies treated the transaction as a nontaxable reorganization, and neither corporation reported a profit or loss on its 1925 federal income tax return. The Commissioner approved the returns. Neither the Securities Corporation nor the Appalachian Power & Light Company increased or decreased any values on its books on account of the assets and liabilities acquired from the Virginian Company. In computing depreciation for federal income tax purposes on the assets acquired and the profit or loss on any sale subsequent to the date of reorganization, each corporation has used the cost to the Virginian Power Company. The Commissioner of Internal Revenue, in passing upon these matters, computed the depreciation deduction on the same basis.

Both the Virginian Power Company and the Appalachian Power Company had issued and sold bonds at a discount, all of which had been issued prior to the reorganizations described above. The Appalachian Electric Power Company placed upon its books as prepaid interest the balances which had not been charged to expenses by either the Virginian Power Company, the Appalachian Power & Light Company, or the Appalachian Power Company. The Appalachian Electric Power Company, from the date it assumed the bonds, paid the interest on the bonds of the Virginian Power Company and those of the Appalachian Power Company. It also amortized the balances of the discount and expenses on the various issues of both companies in the same manner as had been followed by the Virginian Power Company and the Appalachian Power Company.

The parties have stipulated that, if the court decides that the Appalachian Electric Power Company is entitled to continue to make the deduction for unamortized bond discount and expenses which it took over when it assumed the various bond issues of the Virginian Power Company and the Appalachian Power Company, the amounts of $151,192.49 and $178,536.32 should be deducted for the years 1926 and 1927, respectively. The Commissioner refused to make any deduction for unamortized bond discount and expenses in the case of either company and computed the plaintiff's tax without giving it the benefit of any such allowance. The petition originally presented the question of the right of plaintiff to additional depreciation, but this issue has been settled by agreement in the Bureau of Internal Revenue and is no longer in controversy. Besides this, the petition sets out a claim based on the fact that the Ohio Power Company, a subsidiary of plaintiff, sold bonds at a discount which it subsequently redeemed at the callable price which was above par. The Commissioner refused to allow any deduction on account of this transaction, but it is now conceded by defendant that his action in this respect was erroneous. The only questions left to be determined arise out of the transactions involving the bonds issued by the Virginian Power Company and the Appalachian Power Company.

It will be observed that the case involves several reorganizations and mergers. Prior to these reorganizations, both the Virginian Power Company and the Appalachian Power Company had issued and sold bonds at a discount. In the course of the reorganization proceedings, these bonds were assumed by the companies that absorbed the prior organization, and the question involved in the case is whether the plaintiff, under the facts in the case, is entitled to amortize the bond discount and expenses of a predecessor corporation and take a discount therefor in its income tax

returns for 1926 and 1927. In this connection it will be observed that the circumstances with respect to the bonds and also as to the bond discount are different as to the bonds issued by the Virginian Power Company from those issued by the Appalachian Power Company. In both instances, however, the bonds came to the plaintiff through nontaxable reorganizations as contemplated by sections 203 and 204 of the Revenue Acts of 1924 and 1926.

The bonds of the Virginian Power Company were issued at a discount long prior to the various reorganizations, consolidations, and mergers involved in the case, and, had the Virginian Company continued in existence as it was originally organized, it would have been entitled to amortize the bond discount and take a deduction each year from gross income on account of such discount. Helvering v. Union Pacific Co., 293 U.S. 282, 55 S.Ct. 165, 79 L.Ed. 363. The question is whether under all of the circumstances in the case the · plaintiff stands in the shoes of the Virginian Power Company. so as to be entitled to this deduction.

The Virginian Power Company was not affiliated with plaintiff, but plaintiff owned approximately 81 per cent. of its stock, and, while that condition existed, caused the Appalachian Securities Corporation to be organized and have its stock issued to the Virginian Power Company for all of its assets, at the same time assuming all of its liabilities including the bonds in question. The Virginian Company continued in existence until some two years later, when it was dissolved. There was another reorganization and merger before the bonds were finally assumed by the Appalachian Electric Power Company, but these intermediate transactions were in the nature of consolidations or mergers and raise no additional issues. The distinguishing feature with reference to the bonds issued originally by the Virginian Power Company is that they did not become a liability of the Appalachian Electric Power Company by reason of a merger or consolidation with the issuing corporation but through a transaction in which the corporation issuing the bonds received stock for its property and as a part of the transaction the company taking over the property assumed the liability for the bonds. In other words, there was a transfer of the property of the Virginian Power Company, and in consideration of this transfer the Appalachian Securities Corporation agreed to pay the bonds. Subsequently, the property was taken over in succession by the Appalachian Power & Light Company and the Appalachian Electric Power Company. The last corporation in the chain had no right to the deductions now claimed unless each of its predecessors in liability on the bonds had a similar right.

It is contended that, if amortization is not allowed with respect to the bonds of the Virginian Company, there will be a loss by reason of discount and expenses connected with the issuance of these bonds for which no one will be allowed a deduction. It is true there was a loss, but it does not follow that the Appalachian Electric Power Company is entitled to a deduction by reason thereof. The weight of authority seems to be that in such cases where there has been a merger or consolidation of the corporation which originally issued the bonds with the corporation which subsequently assumes and becomes liable for them, the latter is entitled to a deduction for the loss sustained by reason of this liability; but, where there has been a sale or transfer of the property of the issuing corporation without a merger or consolidation with the corporation which assumes the payment of the bonds, then the successor corporation is not entitled to a deduction on account of the loss sustained by reason of the liability assumed.

The identical question now being considered was determined adversely to plaintiff in American Gas & Electric Co. v. Commissioner, 33 B.T.A. 471, 475, largely upon the authority of Turner-Farber-Love Co. v. Helvering, Commissioner, 62 App.D. C. 369, 68 F.(2d) 416, in which the facts were parallel to those in the case at bar.

It is urged on behalf of plaintiff that in the case last cited it was held that there was a sale and that in the instant case there could have been no sale in the transaction between the Virginian Company and the Securities Corporation because no gain or loss was recognized either by the parties or by the Commissioner. But, whether or not there was what might be technically called a sale, there certainly was a transfer. When the case of the American Gas & Electric Co. v. Commissioner, referred to above, was taken on appeal to the United States Circuit Court of Appeals for the Second Circuit, that court held with reference to the transaction that "under section 203 (b) (4) of the Revenue Acts of

1924 and 1926, no gain or loss is to be recognized upon the transfer," and it said further in its opinion, 85 F.(2d) 527, 530:

"Consequently, where there has been only a partial amortization of discount and expenses and a transfer in reorganization occurs, no further loss will be recognized, and that part of the loss which could not be taken prior to the transfer cannot be taken thereafter. While it might be more satisfactory to carry forward through the successor corporation actual unamortized losses incurred by the predecessor, we can find no warrant for this in the statute, regulations, or decisions of the courts"—citing Turner-Farber-Love Co. v. Helvering, supra; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; and Athol Mfg. Co. v. Commissioner (C.C.A.) 54 F.(2d) 230.

Counsel for plaintiff cites some cases which may appear to hold to the contrary but which are distinguished in the opinion from which the quotation above is taken.

It seems to be assumed by plaintiff that the right to a deduction on account of the bond discount was an asset which was transferred to the successor corporations. If it was an asset, it must have been such by reason of being a liability on the part of the government, which clearly it was not. It was merely a contingent right of which under certain circumstances the corporation which issued the bonds could avail itself. But such a right cannot be transferred to another by the party possessing it, although it may continue to exist in cases where one corporation is merged with another. The bonds were sold at a discount, but at maturity the full face value would have to be paid, and money in excess of that originally received must be made available therefor. The practice arose in bookkeeping of setting up bond discount as an asset and writing it off over a period of years by setting aside from income enough for each year so that, when the bonds reached maturity, the face value could be paid. But although set up as an asset it was more in the nature of an offset to the charge made on account of income set aside to meet the future payment of the bonds. As a matter of form in bookkeeping there may be no objection to the method used, but the manner in which the corporation kept its books has no bearing upon the question at issue. Plaintiff treats bond discount as an asset much the same as the value of plant or machinery and, as the

value of plant or machinery is carried forward in a nontaxable reorganization on the same basis to the successor corporation as existed in the case of the predecessor corporation, it is contended on behalf of the plaintiff that a like rule should apply to bond discount. What we have said above shows that bond discount and plant and machinery are not assets in the same sense of the word. Whatever may be the name applied to the transaction, the Securities Corporation acquired the assets of the Virginian Company by the payment of a definite consideration, and we think it is a fair presumption that the price so paid was adjusted to meet the fact that the corporation would have to pay the bonds in full.

■ Our conclusion is that both the weight of authority and the better reasoning are against the allowance of a deduction on account of the discount on the Virginian bonds, and the claim of the plaintiff in this respect is therefore denied.

■ The Commissioner also refused to allow any deduction on account of the discount on the bonds of the Appalachian Power Company. On the same facts, the Circuit Court of Appeals in American Gas & Electric Co. v. Commissioner, supra, held that there was a merger of the Appalachian Power Company in the Appalachian Electric Power Company which essentially preserved the identity of the transferor, citing several Virginia authorities in support of its conclusion as to the merger. Basing its final judgment upon the conclusion that there was a merger, the Circuit Court further held that the deduction should be allowed as to the bonds of the Appalachian Power Company. We concur in the opinion so rendered and follow it in holding in favor of the plaintiff on this point.

■ There remains one other issue between the parties to be determined. This arises out of the fact that on April 1, 1926, there was outstanding $5,000,000 of 6½ per cent. bonds which had been issued at a discount by the Virginian Power Company. The Appalachian Electric Power Company, which, as shown above, had assumed these bonds, redeemed them on the date last named at 105 per cent. of par, and, in accordance with the terms of the mortgage and deed of trust, a premium of $250,000 was paid in connection with the redemption of these bonds. The plaintiff, through its affiliate the Appalachian Electric Power Company, seeks to deduct as a loss the dif-

ference between par and callable price at which the Virginian Power Company bonds were redeemed. This deduction the Commissioner refused to allow. The defendant insists that the right to deduct this loss belonged to the corporation which issued the bonds, and argues that this right does not extend to a successor corporation which had acquired the property of the issuing corporation and assumed its liabilities. In other words, the defendant assumes that the question now under consideration is the same as that arising by reason of the Virginian Company having sold its bonds at a discount. With this we do not agree, but think an entirely different issue is presented.

The right to a deduction on account of its bonds having been sold at a discount originated with the Virginian Company itself. It came into existence when the bonds were sold, but we have held that this right did not pass to a successor company which acquired the property of the first corporation by purchase or transfer and assumed its liabilities. On the other hand, the right to the deduction by reason of having redeemed the bonds at a premium was not brought into existence by the Virginian Company. The right to call the bonds at a specified price was one that ran with the bonds and belonged to any party who assumed their payment. It was an entirely different right from that which arose by reason of having issued the bonds at a discount.

The right to claim a deduction on account of having redeemed the bonds at a price above par did not come into existence until the bonds were so redeemed and, as we think, belonged to the corporation making the payment. Clearly it was this corporation that sustained the loss.

That there was a right to deduction on account of such a loss we think has been settled by the Supreme Court. In Helvering v. American Chicle Co., 291 U.S. 426, 54 S.Ct. 460, 78 L.Ed. 891, a corporation which had acquired all the assets and assumed the liabilities of another, and thereafter purchased in the open market some of the latter's bonds at less than their face value, was held to have realized a taxable gain in the difference between the face value of the bonds and the amount it paid for them. If, under such circumstances, the profit made is held to be that of the redeeming corporation, it is not only fair and just but logical to say that if, as in the case at bar, a loss resulted from the redemption, the loss must also be the loss of the corporation taking up the bonds, and it is entitled to a deduction by reason thereof. The defendant concedes that the Ohio Company is entitled to a deduction on account of having redeemed bonds which it had issued at a price above par. When the Appalachian Electric Power Company assumed the obligation of the bonds, it also acquired the right to avail itself of the provision with reference to their redemption. We are unable to see that it was in any different position that it would have been had it issued the bonds in the first place, and consequently it has the same right to a deduction for the loss incurred as did the Ohio Company.

The Commissioner having erred in computing plaintiff's taxes by reason of failing to make the proper deduction on account of the discount on the bonds of the Appalachian Power Company, for the loss sustained by the Ohio Power Company in redeeming its bonds, and also for the loss sustained by the Appalachian Electric Power Company in taking up at a premium the bonds issued by the Virginian Company, it follows that plaintiff's taxes should be recomputed in accordance with this opinion, and judgment rendered in its favor for the amount found to be overpaid. If counsel for the respective parties can agree on the amount of the overpayment judgment will be entered in accordance with such agreement; otherwise the court will have the computation made and judgment entered for the amount found to be due.